# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-3252

CHARLES WILLIAMS, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 23, 2018                                            Decided August 7, 2018)

*Megan Gentile*, of Arlington, Virginia, with whom *Harold H. Hoffman,* of Arlington, Virginia, was on the brief for the appellant.

*Alexander W. You*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Joan E. Moriarty*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before SCHOELEN, PIETSCH, and GREENBERG, *Judges*.

GREENBERG, *Judge*: The appellant, Charles Williams, appeals through counsel a June 21, 2016, Board of Veteran's Appeals (Board) decision that denied entitlement to an initial compensable rating for erectile dysfunction (ED) under Diagnostic Code (DC) 7522. Record (R.) at 2-14. This appeal is timely, and the Court has jurisdiction over the case under 38 U.S.C. §§ 7252(a) and 7266. The Court holds that in denying a compensable rating under DC 7522, the Board failed to determine whether the appellant's disability is consistent with the ordinary meaning of "deformity." The Court will vacate the June 21, 2016, Board decision and remand the matter for readjudication consistent with this decision.

## I.

The appellant is a Vietnam Veteran who served on active duty in the U.S. Army from August 1967 to August 1969, as a general vehicle repairman. R. at 846, 967 (DD Form 214). The appellant was diagnosed with prostate cancer in August 2006. R. at 899-912. In November 2006, the appellant filed for benefits based on service connection for prostate cancer, secondary to in-

service herbicide exposure.  *See* R. at 840.  In December 2006, VA granted the appellant service connection for this condition.  R. at 840-41.

The nerves surrounding the appellant's prostate were severed during a radical prostatectomy in June 2007.  R. at 760-61.  In July 2007, VA awarded the appellant special monthly compensation (SMC) for the loss of use of a creative organ after he alleged that the procedure had caused ED.  R. at 823-27.  In a January 2008 VA examination, an examiner diagnosed the appellant with severe ED, agreeing that the condition was secondary to the radical prostatectomy.  R. at 811-12.  In March 2008, VA granted the appellant service connection for ED with a noncompensable rating.  R. at 802-10. The appellant appealed the rating assigned.  R. at 720.

In June 2012, the Board denied a compensable rating for ED because it found that the appellant had no deformity.  R. at 307-08.  In January 2015, the Court remanded the appellant's claim for an additional medical examination, after the Secretary conceded that VA had not provided a medical examination that addressed whether the appellant had an internal deformity. R. at 157.

In December 2015, the appellant underwent a VA examination.  The examiner concluded that there was

> no evidence of deformity of the penis. The ED as likely as not relates to nerve damage resultant from the prostatectomy. The ED developed after the prostatectomy. Nerve damage resultant from radical prostatectomy is common and is a well recognized complication following radical prostatectomy. There are no specific tests for "internal deformity of the penis" that would show evidence of nerve damage. Basically, there is no evidence of deformity of the penis at all. Deformity would occur in diseases such as Peyronie's disease, which he does not have. Nerve damage does not cause deformities generally, but rather loss of function. The VA rating system refers to ED as "deformity of the penis", but should be listed as ED since most types of ED are not generally associated with any deformity. He remains unable to have an erection and therefore the condition is considered severe.

R. at 65.  That same month VA issued a Supplemental Statement of the Case (SSOC) continuing its denial of a compensable rating for the appellant's ED.  R. at 43-46.

In March 2016, the appellant responded to the SSOC, arguing that the December 2015 examination was inadequate.  R. at 22-23.  The appellant also requested that VA send him the results of his December 2015 examination.  *Id.*  On May 9, 2016, VA provided the appellant the

2

examination results, attached to a notice letter explaining that the appellant's claim had been returned to the Board's docket and that he had

> **90 days from the date of this letter or until the Board issues a decision in your appeal (whichever comes first)** to request a change in representation or to submit additional argument or evidence, if you elect to do so. Any such request or submission must be sent directly to the Board. *See generally* 38 C.F.R. § 20.1304.

R. at 19 (emphasis in original).

Forty-three days later, on June 21, 2016, the Board issued the decision on appeal denying an initial compensable rating for the appellant's ED. R. at 11. The Board found that the appellant's ED was an unlisted condition and rated under DC "7599-7522, which represents an unlisted genitourinary disability evaluated by analogy deformity with loss of erectile power." R. at 8 (citing 38 C.F.R. §§ 4.115b, 4.20, 4.27 (2017)). The Board then stated that the Veterans Benefits Administration "has indicated that a compensable rating under [DC] 7522 is not warranted in the absence of deformity, and instructs that such deformity be 'evident.'" R. at 8 (quoting *VA Adjudication Procedures Manual* (M21-1), pt. III.iv.4.I.2.a). The Board concluded that "no deformity was found at any point pertinent to this appeal, to include examinations conducted in January 2008, April 2009, January 2012, and December 2015." R. at 11.

Additionally, the Board found that an award of a compensable rating for "[ED] alone, regardless of the severity," under DC 7522 would constitute impermissible pyramiding because the appellant was already in receipt of SMC benefits for the loss of use of a creative organ. R. at 11 (citing 38 C.F.R. § 4.14 (2017)).

## II.

The appellant argues that he suffers from internal and external penile deformities and thus the Board clearly erred in denying a 20% disability rating under DC 7522 for his condition. Appellant's Brief (Br.) at 11-18. Alternatively, the appellant argues that the Board failed to discuss the definition of "deformity" or the term "evident" found in the M21-1, and instead relied on an inadequate December 2015 VA examination to support its determination. Appellant's Br. at 19; Appellant's Reply Br. at 2. The appellant contends that his lay statements were competent evidence of a penile deformity. Appellant's Br. at 20-21.

The appellant additionally argues that the Board violated the Court's holding in *Kutscherousky v. West*, 12 Vet.App. 369 (1999), as well as the Due Process Clause under the Fifth

3

Amendment of the U.S. Constitution, when it failed to provide him 90 days to submit additional argument and evidence after notifying him that his appeal had been returned to the Board's docket. Appellant's Br. at 23-28 (citing U.S. CONST. AMEND. V; *Cushman v. Derwinski*, 576 F.3d 1290, 1297-99 (Fed. Cir. 2009); *Kutscherousky*, 12 Vet.App. 369)[1]. The appellant states generally that 38 C.F.R. § 20.1304(a) is unconstitutional "because it enables the Board to abrogate a veteran's due process right to the opportunity to be heard before having his claim denied." Appellant's Br. at 26.

The Secretary responds that because the medical evidence of record, specifically the December 2015 VA examination, established that the appellant did not have a penile deformity, the Board had a "plausible basis" for finding that the appellant's penile condition did not include a deformity and supported this determination with an adequate statement of reasons or bases. Secretary's Br. at 8-14. It is the Secretary's position that the Board was not required to define "deformity" or "evident." Secretary's Br. at 15. During oral argument, the Secretary conceded that the Board's finding regarding pyramiding was made in error, but that an affirmance of the decision is still warranted because no deformity has been established. Oral Argument (OA) at 20:09-20:40, *Williams v. Wilkie*, U.S. Vet. App. No 16-3252 (oral argument held Jan. 23, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php. The Secretary further argued that although VA's May 9, 2016, letter incorrectly listed 38 C.F.R. § 20.1304 as the controlling regulation, instead of 38 C.F.R. § 19.38, the appellant was adequately notified. OA at 35:30-36:00, 38:08-39:18.

### III.

The Court agrees with both parties that the Board erred by concluding that awarding benefits under DC 7522 in addition to SMC for loss of a creative organ would constitute impermissible pyramiding. *See* 38 C.F.R. § 4.14 (2018) (providing that "[t]he evaluation of the same disability under various diagnoses is to be avoided"). VA's regulations state that a veteran is not barred from receiving SMC under 38 U.S.C. § 1114(k) in addition to schedular compensation for a disability. *See* 38 C.F.R. § 3.350(a) (2018) ("[Special compensation under 38 U.S.C. §

---

[1] The appellant also presents arguments relating to the Board's denial of referral for extraschedular consideration. Appellant's Br. at 23-28. Because the Court is remanding the matter on a schedular basis, it is premature to address this argument. *See* 38 C.F.R. § 3.321 (2017).

1114(k)] is payable in addition to the basic rate of compensation otherwise payable on the basis of degree of disability, provided that the combined rate of compensation does not exceed the monthly rate set forth in 38 U.S.C. [§] 1114(l) when authorized in conjunction with any of the provisions of 38 U.S.C. [§] 1114 (a) through (j) or (s)."). "Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure." *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993) ("The starting point in interpreting a statute [or regulation] is its language."). If the plain meaning of § 3.350 is clear from its text and structure, then that meaning controls and that is the end of the matter. *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006). The Court reviews the interpretation of regulations de novo. *Id.*; *see Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004). Because § 3.350 clearly states that veterans may be compensated with SMC in addition to schedular compensation for a disability, the Board clearly erred in finding that awarding schedular benefits under DC 7522 in addition to SMC would constitute impermissible pyramiding.

For reasons explained below, the Court will not reach the appellant's procedural argument. The only question on appeal, then, is whether the appellant meets the requirements for a compensable rating under DC 7522.

Historically, VA has rated ED by analogy under DC 7522, which awards a 20% disability rating for a "penis, deformity, with loss of erectile power." 38 C.F.R. §§ 4.20, 4.115b, DC 7522 (2018); *see also Lendenmann v. Principi*, 3 Vet.App. 345, 351 (noting that when VA rates an unlisted condition by analogy to a listed condition, it must consider the function affected by the condition, the location of the condition, and the similarity of the symptoms of each condition). This case turns on the proper definition of "deformity," in particular whether a deformity under DC 7522 must be external.

"The starting point in interpreting a statute [or regulation] is its language." *Good Samaritan Hosp.*, 508 U.S. at 409; *see also Ortiz-Valles v. McDonald*, 28 Vet.App. 65, 69 (2016) ("Determining a statute's or regulations plain meaning requires examination the specific language at issue . . . ."); *Petitti*, 27 Vet.App. at 422 ("Regulatory interpretation begins with the language of the regulation, the plain meaning of which is derived from its text and its structure."). "In the absence of an express definition words are given their ordinary meaning." *See Prokarym v. McDonald*, 27 Vet.App. 307, 310 (2015).

Although DC 7522 requires a "deformity" for a compensable rating, VA has not expressly defined this term. The Court will therefore assign the ordinary meaning to this word. *See id.* A "deformity" is a "distortion of any part or general disfigurement of the body." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 478 (32d ed. 2012) [hereinafter DORLAND'S]. DORLAND'S further defines various types of internal and external deformities. *See id.* The Court therefore holds that "deformity" under DC 7522 means a distortion of the penis, either internal or external.

In the decision on appeal, the Board failed to address whether severed nerves caused by a radical prostatectomy meet the definition of "penile deformity," frustrating judicial review. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (finding that Congress mandated, by statute, that the Board provide a written statement of reasons or bases for its conclusions that is adequate to enable the appellant to understand the precise basis for the Board's decision and to facilitate review in this Court). Remand is required for the Board to apply the ordinary meaning of "deformity," and determine whether the appellant is entitled to a compensable rating under DC 7522, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 478. On remand, any negative determination must also be supported by an adequate statement of reasons or bases, reconciling VA's regulatory instructions regarding rating unlisted conditions by analogy with the requirement that a claimant must have an actual deformity to be entitled to a compensable rating under DC 7522.[2] *See* 38 C.F.R. § 4.20 (2018); *see also Lendenmann*, 3 Vet.App. at 351.

Because the Court is remanding the matter, the appellant will be given 90 days to submit additional information or evidence to the Board. *See Kutscherousky*, 12 Vet.App. 369, *see also Clark v. O'Rourke,* No. 16-2826, 2018 WL 3357628 (U.S. Vet. App. July 10, 2018). This matter is to be provided expeditious treatment. *See* 38 U.S.C. § 7112; *see also Hayburn's Case*, 2 U.S. (2 Dall.) at 410, n. ("[M]any unfortunate and meritorious [veterans], whom Congress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one.").

---

[2] The Court need not reach any of the appellant's other arguments about this matter, including his assertions concerning the M21-1. *See Best v. Principi,* 15 Vet.App. 18, 20 (2001) (per curiam order) (holding that "[a] narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against [her]"). The appellant will have a full opportunity to raise his alternative arguments on remand.

**V.**

For the foregoing reasons, the Board June 21, 2016, decision is VACATED and the matters are REMANDED for readjudication.